| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAITLYN LEE-ANNE HOBSON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:18-cv-00447-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

  This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 8).

  At a hearing on May 16, 2019, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

**A. The ALJ's Step 2 Findings Regarding Fibromyalgia**

Plaintiff challenges the ALJ's determination that fibromyalgia was not among Plaintiff's severe impairments at step 2.

The ALJ addressed this finding at page 17-18 of the record. After reviewing the relevant legal standards, especially in Social Security Ruling 12-2p, the ALJ found as follows:

> The undersigned finds that the medical evidence as a whole does not meet the criteria required to make a determination that the claimant has a medically determinable impairment of fibromyalgia based on Social Security Ruling 12-2p. According to the evidence in the medical record, the claimant has not been evaluated by a rheumatologist and her primary care provider, Patricia Quintana-Van Horne, M.D., has not performed an extensive work-up, excluding other possible causes for the claimant's signs and symptoms. Dr. Quintana-Van Horne's treatment notes also do not document the required signs and symptoms for fibromyalgia and does not even provide a full physical examination of the claimant. In the alternative, if the claimant is given the benefit of the doubt and her limited signs and symptoms are considered to be fibromyalgia, the impairment is found to be nonsevere because Cymbalta medication appears to significantly reduce the claimant's symptoms.

(A.R. 18).

The first portion of this opinion, regarding whether there was sufficient evidence under Social Security Ruling 12-2p to find fibromyalgia to be a medically determinable impairment, is not supported by substantial evidence. There is no requirement that Plaintiff be evaluated by a rheumatologist. Rather, SSR 12-2p states that "a person can establish that he or she has an MDI of FM by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence." SSR 12-2p. Here, Dr. Quintana-Van Horne is a licensed physician.

Additionally, Dr. Quintana-Van Horne evaluated other potential causes in the course of her extensive treatment of Plaintiff. See A.R. 513 ("labs were normal. . . . Had EEG, which patient reports she was told was normal. MRI was done a few days ago at Sierra Imaging and Mom was told that was normal except for a retention cyst in one of her sinuses."); A.R. 551 ("She did see a neurologist (consultation reviewed) and endocrinologist (consultation not available) who did not determine that there was a neurologic condition of concern."); A.R. 577 ("Possible

fibromyalgia. Will check lab CBC AND DIFFERENTIAL, COMPREHENSIVE METABOLIC PANEL, ARTHRITIS PANEL."). She also conducted many physical examinations in the context of the tender point evaluations required by SSR 12-2p. See A.R. 576, 588, 621. Furthermore, Plaintiff exhibited symptoms consistent with fibromyalgia. See e.g., A.R. 575 ("She states that she always seems to ache, her hips knees, and calves.").

Thus, the Court finds that the ALJ's determination that "the medical evidence as a whole does not meet the criteria required to make a determination that the claimant has a medically determinable impairment of fibromyalgia based on Social Security Ruling 12-2p" is not supported by substantial evidence.

The Court next turns to the ALJ's alternate finding, that "if the claimant is given the benefit of the doubt and her limited signs and symptoms are considered to be fibromyalgia, the impairment is found to be nonsevere because Cymbalta medication appears to significantly reduce the claimant's symptoms." (A.R. 18). Regarding the finding that a medically determinable impairment is nonsevere, the Ninth Circuit has explained:

> An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen,* 80 F.3d at 1290 (internal quotation marks omitted) (emphasis added); *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir.1988). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." S.S.R. No. 85–28 (1985). Step two, then, is "a de minimis screening device [used] to dispose of groundless claims," *Smolen,* 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85–28. Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Webb did not have a medically severe impairment or combination of impairments. *See also Yuckert,* 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

Webb v. Barnhart, 433 F.3d 683, 686–687 (9th Cir. 2005). Additionally, SSR 12-2p regarding fibromyalgia provides that "We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM, determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." SSR 12-2p.

The ALJ cited the following evidence in support of his conclusion that the Cymbalta rendered the fibromyalgia nonsevere. The ALJ cites to Exhibit 18F79-81, which is a record from May 2, 2015, in which Dr. Van Horne reports that Ms. Hobson "states that she always seems to ache, her hips, knees, and calves. . . . She has temperature issues. . . . Her abdomen is always bothering her. She has abdominal pain off and on . . . ." (A.R. 575). Next to "musculoskeletal," Dr. Van Horne refers to chart showing "15/18 tender points." (A.R. 575-576). Regarding "assessment and plan" for fibromyalgia, Dr. Van Horne wrote "possible fibromyalgia. Will Check lab," along with various panels. There is no discussion of Cymbalta in this record.

The ALJ next cites to Exhibit 18F 92-94, which is a record from May 15, 2015, in which Dr. Van Horne reports "She was started on Cymbalta and she has had a notable improvement in her myalgias." (A.R. 588). Next to "musculoskeletal," Dr. Van Horne notes 15/18 tender points." (A.R. 588). Under the note for fibromyalgia, Dr. Van Horne notes "improved symptoms at this time." (A.R. 590).

The ALJ next cites to Exhibit 18F 125-126, which is a record from November 18, 2015, in which Dr. Van Horne reports "she continues on the Cymbalta, which has helped her significantly. She stopped the medication for a week and she was in bed for awhile. She is sleeping well. She is not exercising. She does walk daily." (A.R. 621). Next to "musculoskeletal," Dr. Van Horne notes she is "positive for myalgias." (A.R. 621). She also observed 14/18 tender spots in the physical exam. (A.R. 621). Under "assessment and plan" for fibromyalgia, Dr. Van Horne wrote "Sleeping well, myalgias are improved. Recommended exercise." (A.R. 622).

Finally, the ALJ cites to Exhibit 18F 162-163, which is a record from July 12, 2016, in which Dr. Van Horne reports "She is here for a follow up of fibromyalgia. She has a questionnaire regarding her ability to work. Right now she is not working. This is from a

combination of her Asperger's, anxiety, depression and fibromyalgia. She complaint of formation of stretch marks and weight gain, about 10#. She is eating less, but she is not able to exercise." (A.R. 658). Next to "musculoskeletal," Dr. Van Horne notes "Cervical back: she exhibits deformity (mild buffalo hump)." (A.R. 658). Next to the physical exam drawings, there is no discussion of tender points. (A.R. 659). Next to "Assessment and Plan" for fibromyalgia, Dr. Van Horne states "Will try muscle relaxants for pain at night. . . Take 1 tablet by mouth nightly as needed for muscle spasm." (A.R. 659).

This record supports the ALJ's conclusion. It demonstrates notable improvement in Plaintiff's fibromyalgia based on Cymbalta over time. Plaintiff reports that it has helped her significantly. Unlike the prior exams, the final exam does not report any tender points or an observation, which was noted in earlier exams, that Plaintiff was "positive for myalgias." While Plaintiff is still consulting the doctor for fibromyalgia, this would be consistent with monitoring of an impairment that has been controlled with medication. While it is true that Plaintiff was prescribed a muscle relaxant for fibromyalgia at her last visit, it was only prescribed "nightly as needed for Muscle spasms." (A.R. 659). It does not indicate symptoms during the day.

The Court thus finds substantial evidence supports the ALJ's finding that fibromyalgia was nonsevere due to Cymbalta.

**B. The ALJ's Evaluation of Treating Physician, Dr. Quintana Van Horne**

Plaintiff next argues that the ALJ erred in giving little weight to the opinion of Dr. Quintana-Van Horne. Dr. Quintana-Van Horne submitted a physical medical source statement, which opined that Plaintiff had many limitations, including being "incapable of even 'low stress' work," and missing more than four days per month. (A.R. 412).

The ALJ gave the following reasons for the weight given to this Medical Source Statement:

> The undersigned accords little weight to the opinion of Dr. Quintana-Van Horne because the opinion is not supported by the doctor's own treatment notes and findings upon physical examinations or the medical record taken as a whole [Exhibit 18F]. As was indicated above, the claimant's physical impairments are nonsevere, as the medical record does not adequately support that the impairments

would more than minimally affect the claimant's ability to perform basic work activities for twelve continuous months."

(A.R. 25).

The Ninth Circuit has held regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Plaintiff argues that Dr. Quintana-Van Horne's medical source statement is uncontradicted because she was the only doctor who performed a physical examination. While this is true, Dr. Quintana Van Horne's Medical Source Statement reflected mental, as well as physical, impairments. Next to "diagnoses," Dr. Quintana-Van Horne wrote "Asperger's disorder, Anxiety disorder, fibromyalgia, major depression." (A.R. 409). Next to the question "Identify any psychological conditions affecting your patient's physical condition," she indicated depression, anxiety, and Asperger's. (A.R. 409). She also indicates the reasons Plaintiff is incapable of even low stress work are "anxiety and panic disorder." (A.R. 411). Because Dr. Quintana-Van Horne's conclusions address both mental and physical impairments, they are contradicted by multiple mental health physicians who provided opinions in this case. The Court thus looks to whether the ALJ provided specific and legitimate reasons that are supported by substantial evidence.

The ALJ primarily relies on the treatment notes discussed above regarding Plaintiff's

responsiveness to Cymbalta. As the Court has already determined that substantial evidence supported the ALJ's finding on this issue, it affirms the ALJs conclusions here. Additionally, Dr. Quintana-Van Horne's statement itself states "Cymbalta has improved frequency of pain; no side effects," (A.R. 409), which provides further support for the ALJ's conclusion.

### C. The ALJ's Treatment of Third Party Opinion

Plaintiff also challenges the ALJ's treatment of the third party opinion given by Plaintiff's mother, including a Third Party Function Report (Exhibit 3E), and letter (Exhibit 12E). The ALJ summarized the opinions in these documents and then stated as follows:

> The undersigned finds the statements of Mrs. Hobson to be partially persuasive except in regards to the severity of the claimant's impairments, as the medical record does not support such severe limitations.

(A.R. 21). "The ALJ may expressly disregard lay testimony if the ALJ gives reasons germane to each witness for doing so." Turner v. Commissioner of Social Sec. 613 F.3d 1217, 1224 (9th Cir. 2010) (internal quotations omitted).

The ALJ's reason, however brief, meets this standard. The ALJ addressed the witness' opinions and provided a reason for the weight given. The reason is germane.

### D. Conclusion

Thus, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **May 21, 2019**   /s/ Eric P. Grojean
UNITED STATES MAGISTRATE JUDGE